Good morning, your honors. Doug Keller on behalf of Mr. Moran. The government below convinced the district court to hold that it established venue as a matter of law under 18 U.S.C. 3237. Now on appeal, the government agrees that it was wrong, that venue wasn't appropriate under 3237, and instead has switched tracks to argue that venue is appropriate under 3238. Essentially, the government's arguing that by sheer happenstance, it introduced overwhelming evidence that Mr. Moran was, quote, first brought to the Southern District after his arrest. Help me on this. It looks to me as you suggested, as though the prosecutor just plain dropped the ball. None of those guys read the statute. It would have been so easy. It's just like proving in a bank robbery that the bank is federally insured. You have somebody say, ask, was the bank federally insured? And they say, yes. And it's probably on every AUSA's checklist. And here, you've got the statute and you just have the agent testify. Where was he first brought? Oh, he was first brought to San Diego. Didn't happen. They dropped the ball. Nevertheless, a jury can draw inferences from circumstantial evidence. And I don't understand why, in the absence of any evidence at all, that he was brought to Los Angeles. Could have been brought to Los Angeles, but there's no evidence that he was and it would have been really inconvenient. The agents work out of San Diego. Why isn't that enough circumstantial evidence to make it more probable than not that he was brought to San Diego? So, two points. I think your bank robbery example is a good one for me because when the government doesn't introduce that FDIC insured certificate, this court would grant the defendant a motion for acquittal, even though you can say... Only if it came up. I mean, I remember reading the rules on that when I was a district judge and some of the AUSA's looked like they might drop the ball. And it looked to me like they could just ask to reopen the evidence. And it probably would be reopened so they could put somebody from the bank on a stand and ask them, is the bank federally insured? Sure. And I guess my point is that... And here, if you had brought it up, it would have been the same thing. Well, we did bring it up in this case. During the Rule 29, we specifically both argued the government had gotten the venue statute wrong and also argued that the government hadn't introduced any evidence of where Mr. Moran was brought following his arrest. What's the matter with the circumstantial evidence there? What, six miles from San Diego and 100 miles from LA? So I guess a couple things. One, the evidence the jury heard was that. They also heard that Mr. Moran was put on a boat that was patrolling the entire California coast. They didn't know from direct evidence where he was brought after that. They didn't know from any evidence at all where the closest seaport was, where the closest seaport was open. They didn't know the boundaries of any of the districts. They didn't know how the arrest process worked Who cares? I mean, if you've got a fish, you bring them to the closest place where they can freeze your fish. Sir, but this isn't simply fishing, right? This is a more of an official process and everyone in this room knows how the official process works. Even more so. Don't you want to get him in jail on shore and six miles instead of 100? Well, first of all, there's no evidence that it was 100 miles to the LA port. And second of all, as a practical matter, what happened actually in this case isn't that far from your honor's example. Once he was brought to shore, he wasn't brought up all the way to the San Clemente border patrol checkpoint for processing, which essentially is at the central district border. So in this case, that's almost what ended up happening. But I think what the struggle of perhaps your honor is having is, you know, all these facts about how this process works. No one in that jury would have known that because they weren't told by the government. So even if you're right, why should we remand and give the district court the ability to determine whether it's the dismissal without prejudice or with prejudice? If this court determines ultimately that the Rule 29 should have been granted and remanded the district court for that determination, I wouldn't have any objection to that. I think this court can on this record say that the dismissal should be with prejudice. But if this court thinks the district court's in a better position to make that determination, I certainly don't have any objection to that. And my client has no objection to that. Why? Where is your client now? He's been deported. I was going to ask why you waited until the Rule 29 motion to raise this issue. We literally couldn't have raised it earlier. We, of course, had an indication in discovery that my client was arrested six miles off the coast, but we didn't know what the evidence was going to show. As far as we know, the government was going to claim that my client got super close to the coast or that he otherwise was. Well, I mean, you got the discovery, right, showing exactly where he was arrested. And then the indictment says that he committed the offense within the Southern District of California, didn't it? Yes, absolutely. But this wouldn't be the first case that the government produces discovery to us that says one thing and proof of trial says something else. And so what the rules say we're supposed to do is if the indictment on his face is valid, we should wait the Rule 29 to make a Rule 29. We literally couldn't have done anything sooner. We couldn't have. There is no motion for summary judgment in a criminal case. So we raised it at the first moment we could, which was at the Rule 29. And we didn't hide the ball. We didn't just say we're making a Rule 29 as the venue and leave it at that. We noted exactly what the government had done wrong. And the government, if it was on the ball, could have reopened its case and introduced the evidence it needed, but it didn't. And so instead, we're left with this positive evidence on appeal where the jury simply wouldn't have had any reasonable basis to make any inference at all about what happened to my client because they needed more sure footing to make the inference about how my client was treated and where he was brought. I cited an example, I think, in my reply brief of one of our clients who was, in fact, brought up to LA to be processed because the San Diego port had been closed. So it's just an example of we don't know without evidence in a particular case what actually happened. So the final point I want to make is we've been focusing on the Rule 29. And obviously, with Rule 29, the standard is harder for me. But I did want to note that even if this Court thinks there's sufficient evidence in the record, there certainly isn't such overwhelming evidence that it wasn't debatable that we couldn't have had the issue submitted to the jury. So as this Court noted in the Lukashov case, as long as a rational jury could have found in our favor, then the Court should have submitted the issue to the jury. And so here, certainly, even if you think a reasonable inference from the evidence was the defendant was brought to the Southern District, it wasn't so overwhelming that that was the only possible reasonable inference. I think we could have made a pretty good... What evidence would the jury have had to decide more likely than not he was brought to the Central District instead of the Southern? I think there's sort of like two buckets of evidence or two things I'd want to point to. The first is that when my client was ultimately arrested, he was put on a ship that patrols the entire California coast. Two, there was evidence in the record that my client was headed to L.A. When the agent was asked where my client was headed, he said, I don't remember, either San Diego or L.A. So that's sort of one bucket of affirmative evidence. His boat was heading north, right? Correct. The second, I think, much bigger bucket is the bucket of evidence the government didn't introduce. At the end of the day, it was its burden to prove venue by punish the evidence. And so oftentimes, the most effective arguments we can make a closing is to point to what the government didn't introduce in this case. So if the judge had properly instructed the jury under 3238, I think we could have pointed to the lack of evidence in this case to argue that the government didn't meet its burden under 3238. No, I think I understand you're saying government agent says he asked the defendant where he was headed. Defendant answered and the agent says he doesn't remember. Maybe you should doubt whether the agent is being truthful when he says he doesn't remember this is exactly what his business is under the statute. So the jury should infer that he must have been headed to L.A. and they dropped the ball by  It's not quite that argument. When when the agent asked my client, where are you headed? According to the agent, my client said San Diego or L.A. The agent couldn't remember which one. And so I think from that testimony, one inference is that my client was in fact headed to L.A. And so one inference is that perhaps then they brought him to L.A. to process them. Want to save you a little bit of time? I do. Thank you, Your Honors. I had pleased the court, Zach Howe, on behalf of the United States. I do agree. In the trial court, we simply dropped the ball here. And our theory of venue was, in fact, erroneous. And that was the one the district court adopted. I agree that all of that was error. Nevertheless, the evidence here was sufficient to establish venue under 18 U.S.C. 3238. San Diego based agents arrested Moran six miles off the coast of San Diego within plain view of San Diego and within plain view of San Diego's major landmarks. So a jury could easily conclude that it was that evidence in the record that the boat was within plain view of San Diego landmarks. Yes, Your Honor. That's at page 38 through 40 of the record. I was confused about that. I didn't think you could see six miles on the sea. I thought your view on the sea was shorter. And what they could see was that Google Maps, if you look at Google Maps, you can see where San Diego's lit up on the map. So, Your Honor, my understanding from page 38 through 40 of the record, that's the testimony of the apprehending agent as opposed to the agent in the airplane. So I think he's talking about what he could actually see from the boat. There's a little ambiguity as to, you know, what point in his trip out in the ocean he's talking about in some spots. But at the very least, at page 40, he seems to be saying that from the spot of the arrest, he could see Sunset Cliffs and Belmont Park. So I do think it's the case that he could see at least some landmarks. But the fact that he's a San Diego-based agent who is six miles away from San Diego permits the reasonable inference that it's more likely than not that... You may be right that the evidence is sufficient, that maybe a rational juror could have concluded that venue was properly in San Diego. But there's also some evidence that may cause a rational jury to go the other way, right? The boat was heading north. Even though this was a San Diego-based agent, as I understand from the record, his responsibility is to cover the entire California coast. And he couldn't remember... The agent who arrested the defendant couldn't remember whether the defendant was headed to Los Angeles or to San Diego. So in the absence of some other evidence showing that venue was properly in San Diego, couldn't a rational jury have gone the other way? I don't believe so, Your Honor. And let me... I think there are two pieces of potentially contrary evidence you've mentioned, so let me take those in turn. And then I'd also like to point to additional evidence that shows that Moran was in fact brought to San Diego. So the first piece that I believe you referenced was the defendant's potential statement that he was headed to LA. The arresting officer said he didn't remember whether he said he was headed to San Diego or LA. Ultimately, I think the fact that he says he's headed has nothing to do with where agents would have taken him. So in other words, if he'd said, I'm headed to New York or I'm headed to Oregon, the agent... Oh sure, but there's no evidence in the record that the agent took him to San Diego. There's no direct evidence of that. I agree with that, Your Honor. But all I'm saying is that... So we're left with the current record and we're trying to figure out what inferences a rational jury could have made. And so you're saying, well, it's really harmless because the jury could make the rational inferences necessary to find that venue was properly in the Southern District of California. But given the pieces of evidence that I focused you on, couldn't a rational jury have made inferences that venue was properly in the Central District of California as well? And so of course you're saying, no, they couldn't have. Tell me why. Okay, so I think the reason is... So I've talked about some of the evidence, the where the evidence is tested. Let me point you to one more piece that I think is important. Page 16 of the record and 22 and 23 of the record contains testimony from the apprehending agent that the boat Moran was traveling in was not equipped to travel in those waters. The agent said it was, quote, very small for the elements we were in. He says it's the sort of boat you see in lakes, but not the sort of boat that you see in the ocean. And he said it had exposed fuel tanks. So the boat was 100 miles north, even though it was not capable of traveling in those waters, even though it had exposed fuel tanks, even though they would have to take these eight individuals they had apprehended and this unseaworthy boat all the way to LA. It's simply not more likely than not that they would have done that. So I think that evidence, coupled with the evidence we've already discussed, certainly would support the reasonable inference that they were that judgment is getting at here is whether a reasonable juror could have concluded that they were brought to L. A. Not enough to say that a reasonable juror could have decided that they were brought to San Diego, right? And I believe for the reasons just discussed, I think the answer is no. I simply don't think in a rational juror would say that San Diego based agents after arresting Moran six miles off the coast of San Diego in an unseaworthy boat would lug that unseaworthy boat 100 miles north to L. A. Or at least that that was more likely than not. And keep in mind, we're looking at the evidence in the light most favorable to the government, and we're purely on a preponderance standard. So this is a low standard. I think the government has cleared that low bar here, and I should point out as well that just as the Supreme Court said in Nieder, just as this court said in Hill, it's any evidence that could lead to the contrary conclusion. And I know Defense Council points to evidence that he says potentially could. But in reality, there's no dispute that the constitutional right to be tried in the right place was vindicated. Moran agrees he was tried in the right place, so there could not be strong evidence that he wasn't brought to San Diego because that's where he was brought. Now, certainly, the agents do patrol a lot of the California coast. But again, they were based out of San Diego, and the arrest happened right next to San Diego. And if I could point to one case that I think is instructive here, it's the Trenary case from this court. It's a similar sort of situation in that there was no direct evidence that the defendant traveled from Long Beach to Punta Bandera, Mexico, with a car full of drugs, and that's near Tijuana. And the court said that given the time factor, given the distance factor, and given the probable source of the drugs, it was more likely than not that the defendant traveled through the Southern District of California. In other words, it would have taken a really long time. I thought the standard through which we have to review this issue in the instance where the court failed to give a venue instruction to the jury is that the government wins if the evidence could only be interpreted in the government's favor. So if the evidence has compelled that conclusion, then the matter has to be sent back for dismissal. Is that not correct? So I think there are two separate standards at issue. One is the sufficiency argument. And in that case, we're only asking whether any rational juror could find venue by a preponderance. The jury instruction standard would be whether every rational juror essentially could find venue by a preponderance if the issue were preserved. Here, it's actually more akin to the sufficiency standard because there was never a request for a venue instruction. But nevertheless, even if the court were to assume that that argument were preserved and to apply the standard that essentially every reasonable juror would have to find venue by a preponderance, I think for the reasons discussed, every reasonable juror would reach that conclusion. The final point I'll address is that if the court were to dismiss... So you're saying what we should do is analyze this under the standard for unobjected to error? Or the jury instruction argument, I think that's correct. I think the sufficiency of the evidence argument was preserved by that Rule 29 motion and it was appropriate to raise it after trial given that any deficiency in venue was not apparent on the face of the indictment. So you're saying use the Olano standard for that? Correct. And then I'll finally just note, I believe Judge Wynn had asked a question about what to do if there is a dismissal. I believe the appropriate approach here, if the court were to decide there's a venue problem, would be to dismiss without prejudice. That's plain under this court's LaZoya case. That's plain under the Katso case, which addressed a re-indictment in the same district and held that there was no collateral estoppel bar, there was no double jeopardy bar. Wouldn't the district court be in the best position to figure out whether it should be dismissed without prejudice? I think the district court certainly could address it in the first instance. What this court said in Katso was that it didn't make sense to apply collateral estoppel when the issue didn't go to guilt or innocence, so that rationale would apply directly here. But if the court doesn't think that it can decide the issue in the first instance, then I agree that the district court should get a shot at it. So for those reasons, I would ask that the court affirm. Thank you. Thank you. Just briefly on the plain error issue, Your Honors, the government didn't argue plain error in its briefing, and I don't know of any case that says they can at all argument for the first time invoke plain error. But to the extent we needed to make the proper objection, we absolutely did. In context, what happened is the court first held that, as a matter of law, the Southern District of California extended out 12 miles. If the court was right about that, and we think it wasn't, and we then it would follow that both there was sufficient evidence of venue, and in fact there was overwhelming evidence of venue, because our client was obviously never outside of the 12 miles. So we didn't need to re-object and tell the judge that, yes, we still think the Southern District only extends out three miles. You wouldn't have to ask for a jury instruction? We didn't need to because it would have been futile. It was clear from the court's ruling at that point that any jury instruction would have been pointless. And we agreed that if the Southern District extended out 12 miles, then there was no need for a jury instruction because at that point there was overwhelming evidence that venue was proper. So we didn't need to re-raise what would have been a futile objection. The reason for these rules is there's only a limited amount of lying in the weeds you can get away with without Olano coming up. I think this is absolutely not an example of defense counsel lying in the weeds. Well, there's nothing wrong with lying in the weeds. I mean, if the government has the burden of proof for 1, 2, and 3, and they prove 1 and 2, you can just wait till they close their case to make your motion. Sure, and we've certainly done that at times. But I think in this case that's not what happened. The judge was on notice what our position was, which was the Southern District didn't extend out 12 miles. So it just it wouldn't have made any sense for us then to ask the judge for instruction that she essentially already told us she wouldn't apply because she thought differently about the boundaries of the Southern District. I see I've gone over my time. I'm happy to answer any other questions. My colleagues have any additional questions? No. All right, thank you very much both sides for your argument. The matter is submitted.
judges: Kleinfeld, Nguyen, Pauley